IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BORGWARNER, INC. and BORGWARNER MORSE TEC LLC, | § § § | No. 413, 2016 |
| Defendants Below, Appellants, | § § § § | Court Below—Superior Court of the State of Delaware |
| v. | § § | C.A. No. N15M-05-009 |
| FIRST STATE INSURANCE COMPANY, NORTH RIVER INSURANCE COMPANY, and OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST, | § § § § § § § § | |
| Plaintiffs Below, Appellees. | § § | |

Submitted: May 3, 2017
Decided: May 17, 2017

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices; **BOUCHARD**, Chancellor,[*] constituting the Court *en Banc*.

## ORDER

This 17th day of May, 2017, it appears to the Court that:

(1)    BorgWarner, Inc. and BorgWarner Morse TEC LLC ("BorgWarner") have appealed from the Superior Court's July 14, 2016 Opinion and Order, which denied BorgWarner's request for reconsideration of the Superior Court

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

Commissioner's March 22, 2016 Order granting in part BorgWarner's motion to compel the Owens Corning/Fibreboard Asbestos Personal Injury Trust ("Trust") to comply with a May 6, 2015 subpoena served by BorgWarner. The Commissioner's order also denied in part North River Insurance Company's ("North River") and First State Insurance Company's ("First State") motion to quash the subpoena. We affirm the Superior Court's judgment, which refused to reconsider the Commissioner's Order, on the ground that North River waived any confidentiality protections by using certain of the materials subject to subpoena in a later proceeding in federal court.

(2)     BorgWarner is a defendant in an Illinois state court action initiated by its insurers. In the Illinois case, the parties dispute whether certain of BorgWarner's insurance policies required BorgWarner to obtain the written consent of its insurers before incurring costs defending against asbestos claims. Although the Illinois court ruled that the plain language of the policies required the prior written consent by its insurers before incurring defense costs, the court nonetheless allowed the case to go forward if BorgWarner could prove through insurance company custom and practice that insureds are permitted to incur defense costs without first obtaining the insurer's consent.[1]

---

[1] *Cont'l Cas. Co. v. BorgWarner, Inc.*, No. 04 CH 1708 (Ill. Cir. Ct. Sept. 30, 2013) (Super. Ct. Docket Item 4) (Hearing Trans. at 149-53); *see also Cont'l Cas. Co. v. BorgWarner*, 2016 WL 1169107, at *1-2 (Del. Super. Mar. 22, 2016).

(3)     After the Illinois decision, BorgWarner issued a Delaware subpoena to the Trust.  The Trust was set up in 1985 as part of a settlement agreement—referred to as the Wellington Agreement—to manage an avalanche of asbestos claims facing insureds and their insurers.  The Wellington Agreement established a non-profit claims processing center that coordinated claim payments on behalf of asbestos producers, and established arbitration procedures to resolve claims the parties could not settle.[2]  BorgWarner sought materials from a private arbitration under the Wellington Agreement between Owens-Corning and a number of its insurers, which included North River.  BorgWarner hoped to discover evidence used during the private arbitration that supported its custom and practice claim in the Illinois suit.  After North River and First State objected to the subpoena,[3] BorgWarner moved to compel compliance in the Superior Court.  North River and First State intervened and responded by moving to quash the subpoena.

(4)     After narrowing the scope of the subpoena to the information directly relevant to the Illinois action, a Superior Court Commissioner found that confidential information generated by the arbitration should be protected from subpoena.  According to the Commissioner, whose decision was adopted by the Superior Court, the public policy of Delaware favors arbitration, and allowing third parties to

---

[2] *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1201 (3d Cir. 1995).
[3] The Trust also objected, arguing that it could not provide the documents until the insurers' objections were resolved.

subpoena confidential arbitration materials would undermine the State's interest in ensuring "speedy, efficient and secure arbitration to resolve disputes."[4]  But, the Commissioner also ruled that North River waived the confidentiality of certain arbitration materials because it used those materials in later federal court litigation with another insurer.[5]  As the Commissioner found, "North River cannot use evidence that was created during [arbitration proceedings] in litigation where it was the plaintiff and then argue it is still confidential and not subject to disclosure in unrelated litigation."[6]

(5)    On appeal to our Court, BorgWarner initially challenged the Commissioner's order, adopted by the Superior Court, on two main grounds: (a) the materials generated by the Wellington Agreement arbitration were not confidential, and the public interest in promoting arbitration did not outweigh the court's interest in enforcing subpoenas; and (b) the scope of the waiver should have extended to all arbitration materials relating to the same subject matter, as opposed to the narrower categories of materials in the Commissioner's order.  At oral argument before our Court, however, BorgWarner narrowed the focus of its subpoena to the testimony of the three individuals relied on in the federal court proceedings—Graves Hewitt,

---

[4] *Cont'l Cas. Co.*, 2016 WL 1169107, at *3.
[5] *N. River Ins. Co. v. Phila. Reins. Corp.*, 831 F. Supp. 1132 (D.N.J. 1993), *aff'd in part, rev'd in part sub nom. N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194 (3d Cir. 1995).
[6] *Cont'l Cas. Co.*, 2016 WL 1169107, at *4.

Claude James Ayliffe, and William G. Carson. The Third Circuit referred to their testimony in its decision:

> After examining the policy language, the arbitrator determined, "The word 'consent' and associated words employed in [the insurance policy] are not to be given their plain or literal meanings...." Arb. Op. at 23. Having implicitly found an ambiguity, he looked to extrinsic evidence to explain the meaning of consented-to costs. He noted that credible evidence established that these words have particular meaning within the insurance industry and relied on testimony that the condition of consent is a term of art within the insurance industry. *Id.* For example, Graves Hewitt, an insurance consultant and former Chief Executive Officer of First State Insurance Company, stated that it would be "very rare" for an insured to make a formal request of an insurer for consent. *Id.* at 20. C. James Ayliffe, a retired British insurance executive "whose substantial career was involved within the American insurance market," testified that he had never experienced a case where the insured would go to the excess carrier for consent to costs being incurred. *Id.* And William G. Carson, Director of Home Office Underwriting for Crum & Forster, explained that a policy requirement that written consent be obtained before costs are incurred does not necessarily constitute a condition to the payment of costs. *Id.* Therefore, on the basis of the language of the policy and industry practice, the arbitrator concluded that the inconsistent provisions could not establish an express exclusion of coverage. *Id.* at 23. We believe the arbitrator's interpretation is not unreasonable under Ohio law and gives effect to the inconsistent requirements of prior consent and exhaustion of underlying limits in the policy.[7]

(6)    BorgWarner stated at oral argument that it would be satisfied with the testimony of these individuals. Because of the narrowing of the dispute at oral argument, we need not reach the other issues raised in this appeal because it can now be decided solely on the grounds of waiver found by the Commissioner. The

---

[7] *N. River Ins. Co.*, 52 F.3d at 1209 (footnote omitted).

Commissioner ordered that the Trust produce "all evidence in its possession used by North River under the Wellington ADR, in whatever form, that has been publicly disclosed, released, or used in other previous litigation."[8] Neither North River nor First State challenged the Commissioner's ruling on appeal. Now that BorgWarner has narrowed its request to the testimony of the three individuals, we find that BorgWarner's revised request falls squarely within the Commissioner's Order. Thus, to the extent the testimony of the three individuals exists, the Trust must produce complete copies of their testimony to BorgWarner under the confidentiality agreement in place between the parties in the Illinois action.

NOW, THEREFORE, IT IS ORDERED that the Commissioner's March 22, 2016 Order as adopted by the Superior Court in its July 14, 2016 Opinion and Order, is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[8] *Id*. at *5.